UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEEPTHI WARRIER EDAKUNNI, et al., <br><br>         Plaintiff,<br>   v.<br><br>ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security,<br><br>         Defendant. | CASE NO. 2:21-cv-00393-TL<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This Administrative Procedure Act (APA) case centers on claims that the United States Citizenship and Immigration Services (USCIS) has unlawfully delayed adjudicating Plaintiffs' applications for change or extension of their visa status and for work authorization. Having thoroughly considered the parties' cross-motions for summary judgment (Dkt. Nos. 44 and 45-1) and the relevant record, the Court DENIES both motions for the reasons stated below.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

# I. BACKGROUND

## A. Regulatory Background

The Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101, *et seq.*, regulates admission of nonimmigrants into the United States. This putative class action suit concerns nonimmigrants seeking to extend their H-4 or L-2 visa statuses (or change to H-4 or L-2 status) and to seek or renew Employment Authorization Documents (EADs). Dkt. No. 15 at 76–77. Plaintiffs are spouses of H-1B and L-1 visa holders, and, as such, are derivative beneficiaries of the H-1B and L-1 programs. *Id*. at 2, 41.

The H1-B program allows foreign nationals to temporarily work in the United States in a "specialty occupation" that requires "theoretical and practical application of a body of specialized knowledge" and "attainment of a bachelor's or higher degree in the specific specialty (or its equivalent)." 8 U.S.C. § 1101(a)(15)(H); 8 U.S.C. § 1184(i). Spouses of H-1B visa holders can obtain an H-4 visa to live in the United States. Dkt. No. 45-1 at 4.

The L-1 program similarly allows employees of foreign companies to transfer to the United States to temporarily work for "the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge." 8 U.S.C. § 1101(a)(15)(L). Spouses of these intracompany transferees can live in the United States on an L-2 visa. Dkt. No. 45-1 at 4.

H-4 visa holders must separately obtain employment authorization to work in the United States by filing a Form I-765. Dkt. No. 29 at 30. Pursuant to a recent settlement in *Shergill et al. v. Mayorkas*, 2:21-cv-01296-RSM (W.D. Wash. 2021), USCIS has been issuing proof of employment incident to status to L-2 visa holders without requiring a separate application. Dkt. No. 76 at 2; *see also* Dkt. No. 67-3 (redacted copy of *Shergill* settlement agreement).

H-1 and L-1 visa holders can apply to extend their admission beyond the initial term. Their derivative beneficiaries must also apply to extend their H-4 or L-2 status by submitting a Form I-539 to USCIS. Dkt. No. 29 at 29. Applicants seeking to extend their H-4 or L-2 status become eligible to apply for extension of status six months before their current status expires. *See* 80 Fed. Reg. 10297, 10299.

### B.      Brief History of this Litigation

Plaintiffs are dozens of individuals who had applied to extend or change their H-4 or L-2 visa statuses and renew their associated EADs. Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security, which houses USCIS. He is sued in his official capacity, in which he oversees adjudication of immigration benefits requests. Dkt. No. 15 at 38. Plaintiffs allege that USCIS has unreasonably delayed the adjudication of their and putative class members' H-4 visa extensions, L-2 visa extensions, and H-4 EADs. *Id*. at 69–89.[1]

The original class action complaint was filed on March 22, 2021. Dkt. No. 1 at 75. In May 2021, Plaintiffs moved for a preliminary injunction seeking adjudication of their pending I-539 and I-765 forms within seven days. Dkt. No. 16 at 1. Upon a request for supplemental briefing, Defendant confirmed that a biometrics requirement from which Plaintiffs were seeking relief, among their other demands, had been suspended as of May 17, 2021, for H-4 and L-2 applicants. Dkt. No. 27 at 2–3; Dkt. No. 28 at 1.[2] Soon after, Defendant filed the Certified Administrative Record on the docket. Dkt. Nos. 30–32.

---

[1] Plaintiffs had also pled a claim of unreasonable delay in adjudication of L-2 EADs, but following the settlement in *Shergill* described *supra*, this is no longer a live claim. *See* Dkt. No. 15 at 89–90; Dkt. No. 67-3.

[2] In this filing, Defendant links to the USCIS webpage announcing the biometrics requirement suspension, effective May 17, 2021. Dkt. No. 28 at 1 (citing to *USCIS Temporarily Suspends Biometrics Requirement for Certain Form I-539 Applicants*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/news/alerts/uscis-temporarily-suspends-biometrics-requirement-for-certain-form-i-539-applicants (last updated May 13, 2021)).

Several months later, the parties stipulated to consolidation of this case with the later-filed *Sharma et al. v. Mayorkas*, 2:21-cv-00546-RAJ, which was also pending before this Court and featured "the same defendant, counsel, and questions of law." Dkt. No. 38 at 1. Notably, the parties stipulated to informally supplementing the administrative record with information about the *Sharma* plaintiffs in chart form, rather than producing their individual application documents. *Id*. at 2, n. 1. Finding good cause, the Court consolidated the cases. Dkt. No. 39 at 1.

Per the briefing schedule requested by the parties and approved by the Court, the parties cross-moved for summary judgment on June 28, 2021. *See* Dkt. Nos. 38, 39, 45-1,[3] and 44. Shortly after, Plaintiffs moved for class certification and then to amend the complaint again to add individual plaintiffs. Dkt. Nos. 53, 60. This case was re-assigned to Judge Lin on December 13, 2021. In February 2022, the Court specifically asked the parties to brief, *inter alia*, which plaintiffs still had justiciable claims. Dkt. No. 74 at 1. The parties responded that all of the original and proposed amended plaintiffs' applications had been adjudicated by USCIS. Dkt. No. 76 at 5. Plaintiffs later moved to file a third amended complaint to add individual plaintiffs whose applications were still awaiting agency review. Dkt. Nos. 84 at 1–2; 84-1 at 5–10. Given that it was unopposed, the Court granted the motion to file a third amended complaint. Dkt. Nos. 85, 86.

C. **The Instant Motions**

Defendant seeks summary judgment denying Plaintiffs' claims on grounds that (1) many individual plaintiffs' I-539 and I-765 forms had already been adjudicated and approved, rendering their claims moot, Dkt. 45-1 at 11–12; and (2) that the agency had not unreasonably delayed adjudication of the remaining claims under the six-factor test articulated in *Telecommunications Research and Actions Center v. Federal Communications Commission* (the

---

[3] Defendant identified clerical errors in the original summary judgment filings. In this Order, the Court refers to the corrected docket entries (*i.e.*, Dkt. Nos. 45-1, 46-2, 47-1, 47-2).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

*TRAC* factors). *Id*. at 12–13 (citing 750 F.2d 70, 79 (D.C. Cir. 1984)). In their opposition briefing, Plaintiffs did not address the mootness argument, *see generally* Dkt. No. 49, and they argued that USCIS had provided an "incomplete" certified administrative record, which was devoid of evidence "germane to the *TRAC* factors." *Id*. at 4–5.

Meanwhile, Plaintiffs claimed in their own summary judgment motion that (1) USCIS had flouted "explicit statutory and regulatory adjudication timelines and objectives," Dkt. No. 44 at 8; and (2) the administrative record is "at once both over-inclusive and under-inclusive to the extent that it prevents judicial review and fails to explain the agency's delay." *Id*. at 16. Defendant contests the existence of "explicit, mandatory, or relevant deadlines" for adjudication of Plaintiffs' I-539 or I-765 forms. Dkt. No. 48 at 3. Defendant also vigorously refutes that the administrative record is insufficient to facilitate judicial review of Plaintiffs' claims, including the *TRAC* factors. *See id*. at 14–21.

## II.   LEGAL STANDARD

### A.   Prefatory Note

Plaintiffs have alleged significant harm to themselves and "100,000 others," Dkt. No. 44 at 16, caused by the lapses in visa status and work authorization they have experienced while awaiting adjudication of their H-4 and L-2 benefits requests during an unprecedented worldwide pandemic. They continue to implore the Court to "answer whether it is reasonable for the defendant to guarantee job loss because they prohibit extension applications earlier than six months prior to expiry and then take over a year to adjudicate." Dkt. No. 84-1 at 5.

District court review of complained-of agency inaction is extremely narrow in scope. Under Section 706(1) of the APA, the Court can merely compel USCIS to take "a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 64 (2004) (emphases in original). "[W]hen asked to review an agency's failure to act, . . . courts

must approach the substantive task of reviewing such failures with appropriate deference to an agency's legitimate need to set policy through the allocation of scarce budgetary and enforcement resources." *Heckler v. Chaney*, 470 U.S. 821, 855 (1985) (Marshall, J., concurring).[4]

This Court has limited ability to address or rectify the harms Plaintiffs are experiencing, as it does not have the power to order USCIS to return to concurrent processing, to employ more staff, or to allow applicants to submit their renewal requests more than six months before their benefits expire—even though some or all of these changes may be needed. And for the reasons explained below, the Court finds no basis for the existence of a statutory or regulatory deadline governing the applications at hand.

### B.   Summary Judgment on Administrative Procedure Act Claims

The Administrative Procedure Act (APA) authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *accord Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). When the agency has failed to act, the reviewing court may only compel "*discrete*" agency action that is "legally *required*." *Norton*, 542 U.S. at 63. APA challenges are "routinely" resolved via summary judgment. *Raj & Co. v. U.S. Citizenship & Immigr. Servs.*, 85 F. Supp. 3d 1241, 1244 (W.D. Wash. 2015). "The function of the district court on summary judgment [in an APA case] is consequently 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.' " *Raj & Co.*, 85 F. Supp. 3d at 1244–45 (quoting *Occidental Eng'g*

---

[4] *See also* Eric Biber, *Two Sides of the Same Coin: Judicial Review of Administrative Agency Action and Inaction*, 26 Va. Env't. L.J. 461, 467 (2008) ("There is a more fundamental question raised by the judicial distinction between agency action and inaction: why draw such a distinction in the first place? . . . The answer to the fundamental question above is that courts defer to agency decisions regarding resource allocations. Such decisions are almost always implicated when a court is considering a claim that an agency has not acted, or has not acted quickly enough.")

*Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)). Accordingly, "summary judgment functions as a mechanism for determining as a matter of law whether the administrative record supports the agency's decision and whether the agency complied with the APA." *Victorov v. Barr*, No. CV-19-6948-GW-JPRx, 2020 WL 3213788, at *2 (C.D. Cal. Apr. 9, 2020) (citing *id*.).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)).

Generally, judicial review of an agency decision is limited to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005). "Although the Court's review of the evidence is to be 'searching and careful,' it is 'not empowered to substitute [its] judgment for that of the agency.' " *GB Int'l v. Crandall*, 403 F. Supp. 3d 927, 931 (W.D. Wash. 2019) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)), *aff'd*, 851 F.App'x 689 (2021). In agency inaction cases arising under 5 U.S.C. § 706(1), judicial review "is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (citing *Babbitt*, 105 F.3d at 511).

### III.   DISCUSSION

#### A.   Subject Matter Jurisdiction

Federal courts lack authority to render opinions "upon moot questions." *Church of Scientology of Calif. v. United States et al.*, 506 U.S. 9, 12 (1992). "In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court

'lacks the ability to grant effective relief,' and the claim is moot." *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (citation omitted).

This suit is a putative class action, with a class certification motion pending. Dkt. No. 53. Resolution of a putative class representative's claim "will not necessarily moot the class action . . . . even if the district court has not yet addressed the class certification issue." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011).

Defendant has argued, in the context of the motion for summary judgment, that individuals whose applications have been approved no longer have a live claim or controversy. *See* Dkt. No. 45-1 at 11–12. Plaintiffs contend in a subsequent filing to this Court that "Defendant has a proclivity in immigration benefit delay cases to pick off named plaintiffs and move to dismiss once all named plaintiffs have received adjudications of the [sic] work authorization." Dkt. No. 62 at 2 (Plaintiff's reply brief supporting the motion to file a second amended complaint). In *Pitts*, the Ninth Circuit recognized that defendants may adopt a "tactic of picking off lead plaintiffs" in order to avoid a class action. *Id.* at 1091 (citation and quotation omitted). The appellate court extended the capable-of-repetition-yet-evading-review exception to mootness beyond claims that are inherently transitory (such that a trial court would have insufficient time "to rule on a motion for class certification before the proposed representative's individual interest expires"), *id.* at 1090 (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991), to reach claims that are "transitory by virtue of the defendant's litigation strategy." *Id.* at 1089–91; *see also Norton v. LVNV Funding, LLC*, 396 F. Supp. 3d 901, 921–22 (N.D. Cal. 2019) (detailing the reasoning in *Pitts*); *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1302–04 (S.D. Cal. 2018) (applying mootness exception to APA agency inaction claims brought on behalf of a putative class).

Since this litigation began, USCIS has adjudicated the applications of all of the original *Edakunni* and *Sharma* plaintiffs, as well as those of the proposed new plaintiffs who would have been added via a second amended complaint. Dkt. Nos. 72-1, 76 at 5. Defendant did not oppose Plaintiff's request to file a third amended complaint with yet more new plaintiffs, Dkt. No. 85, and asserts that it utilizes a first-in-first-out (FIFO) system, though "there may be deviations from strict FIFO policy based on individual center workloads, expedite requests, and other mitigating circumstances." Dkt. No. 45-1 at 7.

As addressed below, the Court is not able to determine whether Defendant has been picking off plaintiffs, utilizing a FIFO system, or some combination of both. *See* discussion *infra* Section III.C. However, the Court does not believe it needs to make such a finding because of the capable-of-repetition-yet-evading-review exception to mootness. A claim qualifies for this exception if " 'the pace of litigation and the inherently transitory nature of the claims at issue conspire to make [mootness] requirement difficult to fulfill.' " *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (quoting *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018)), *cert. denied*, 141 S. Ct. 2795 (2021). A pre-certification class action claim falls within this exception if (1) "the duration of the challenged action is too short to allow full litigation before it ceases," and (2) "there is a reasonable expectation that the named plaintiffs could themselves suffer repeated harm or it is certain that other persons similarly situated will have the same complaint." *Id.* (quotations and citations omitted). The need to repeatedly amend the complaint to add plaintiffs in this case demonstrates that the claims presented are inherently transitory and, therefore, fall into the capable-of-repetition-yet-evading-review exception to mootness. Therefore, even if some or all of the proposed fourteen new plaintiffs from the third amended complaint have had their applications adjudicated at this point, the Court is satisfied that it has

subject matter jurisdiction and can proceed to assessing the motions for summary judgment on their merits.

**B.       Existence of a Statutory or Regulatory Deadline**

First, the Court addresses what law it should apply in its review. Where "Congress has specifically provided a deadline" for the agency to perform an action, "no balancing of factors is required or permitted." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177, n.11 (9th Cir. 2002). Plaintiffs cite several statutes and regulations as evidence that USCIS has exceeded mandatory timetables for adjudication of their applications and thus call for a ruling not based on the *TRAC* factors. *See generally* Dkt. No. 44. The Court reviews each of these in turn.

Plaintiffs argue that the Immigration and Nationality Act (INA) sets a thirty-day deadline within which USCIS must process L-2 benefit requests.[5] *Id*. at 8–10. Their argument hinges on a code section that provides:

> The Attorney General shall provide a process for reviewing and acting upon petitions under this subsection with respect to nonimmigrants described in section 1101(a)(15)(L) of this title within 30 days after the date a completed petition has been filed.

8 U.S.C. § 1184(c)(2)(C).

To support their interpretation of a mandatory deadline, Plaintiffs point to the referenced code section (Section 1101(a)) of the INA, which defines various classes of "nonimmigrant aliens") to include people eligible for L-1 visas "and the alien spouse and minor children of any such alien if accompanying him or following to join him." *See* 8 U.S.C. § 1101(a)(15)(L); *see also* Dkt. No. 44 at 9.[6] Plaintiffs then attempt to rebut an argument previously made by Defendant (in the context of preliminary injunction briefing), *see* Dkt. No. 21 at 14, that Section

---

[5] Because L-2 EADs are not currently at issue, the Court does not address Plaintiffs' authorities on L-2 EADs.

[6] Plaintiffs mistakenly cite to 8 U.S.C. § 1184(a)(15)(L) in their briefing. *See* Dkt. No. 44 at 9.

1101(a) does not govern L-2 visas by asserting that USCIS regulations do not distinguish between applications and petitions, citing the definitions of "application," "benefit request," and "petition." Dkt. No. 44 at 13 (citing 8 C.F.R. § 1.2). In response, Defendant correctly points out that Section 1184(c) "applies to 'petitions of the importing employer'—not applications for extension of stay or change of status filed by the applicant, which are at issue here." Dkt. No. 48 at 11.

The Court agrees with Defendant. The text of the statute is clear and unambiguous. First, the specific provision relied on by Plaintiff addresses "a process for reviewing and acting upon petitions **under this subsection** . . . ." 8 U.S.C. § 1184(c)(2)(C) (emphasis added). But the subsection at issue is entitled "Petition of Importing **Employer**." 18 U.S.C. § 1184(c) (emphasis added). Second, the subsection begins with a statement discussing how the question of importing "any alien as a nonimmigrant" shall be determined upon "petition of the importing **employer**" which "shall be made and approved before the visa is granted" and the approval of which "shall not, of itself, be construed as establishing that the alien is a nonimmigrant." U.S.C. § 1101(c)(1) (emphasis added). Third, the subsection requires "a procedure under which an importing **employer** . . . may file a blanket petition to import aliens as nonimmigrants described in section 1101(a)(15)(L) of this title." 8 U.S.C. § 1184(c)(2)(A) (emphasis added). The reference to § 1101(a)(15)(L) merely indicates a category of employees that an employer may petition to import. *Id*. Plaintiffs have failed to establish that a thirty-day timeline applies to L-2 visa extensions on this basis.

Plaintiffs further assert that "the plain language and clear purpose of the governing regulations establish an adjudication timeline for H-4 visas and EADs." Dkt. No. 44 at 14. Plaintiffs cite a recent asylum case from this district, *Gonzalez Rosario v. USCIS*, where "121-day delays in employment authorization were unreasonable." *Id*. This case is readily

distinguishable. In *Rosario*, a statute requiring final adjudication of an asylum application within 180 days of filing "sync[ed] up with" regulatory requirements "that after the asylum application has been pending for 150 days, the EAD application should be resolved within 30 days." *See Rosario*, 365 F. Supp. 3d 1156, 1158, 1162–63 (W.D. Wash. 2018). Though USCIS had previously made rules regarding its commitment to process H-4 extension applications within ninety days, Dkt. No. 44 at 15–16, Plaintiffs concede that "the agency decided to abandon these processing commitments." *Id.* at 16.

Plaintiffs go on to mischaracterize a District of Columbia ruling, stating that a court there "appears to concur that the outer limit for adjudication [of H-4 benefit requests] is 180 days." *Id*. (mis-citing *Verma v. U.S. Citizenship & Immigr. Serv.*, No. 20-cv-03419-RDM, 2020 WL 7495286, at *6 (D. D.C. Dec. 18, 2020)). Yet that case did not go so far: The Court found that "although Congress did not *mandate* that USCIS adjudicate petitions within six months' time, it expressly *endorsed* that timeline" in 8 U.S.C. § 1571(b). *Verma*, 2020 WL 7495286, at *7 (emphases in original). "To be sure, that sense of the Congress does not carry as much weight as would a statutory deadline, but it still carries some weight in the overall balance." *Id.* Moreover, the statutory text endorsing a 180-day timeline is explicitly codified as "policy" behind enactment of an immigration statute. *See* 8 U.S.C. § 1571(b). Other courts "have overwhelmingly interpreted [this statute] to not [provide] a hard deadline." *Pacharne v. Dep't of Homeland Sec.*, 565 F. Supp. 3d 785, 795 (N.D. Miss. 2021). Significantly, unlike other segments of the INA, § 1571(b) uses the permissive language "should" rather than the mandatory language "shall." *Compare* 8 U.S.C. § 1571(b) *with, e.g.*, 8 U.S.C. §§ 1573, 1574; *see also Kingdomware Techs., Inc., v. United States*, 579 U.S. 162, 171 (2016) ("the word 'shall' usually connotes a requirement") (citations omitted); *U.S. v. Montgomery*, 462 F.3d 1067, 1069–70 (9th Cir. 2006) (explaining "the term 'should' often connotes a strong suggestion, not a requirement,"

and that its precise statutory meaning "depends on the context in which the words are found") (citations omitted).

Plaintiff has failed to establish that USCIS was required to rule on their H-4 benefits requests within 180 days. This Court joins courts across the country in determining that there is no mandatory timeframe within which USCIS must process H-4 applicants' I-539 and I-765 forms. *See, e.g.*, *Telukunta v. Mayorkas*, No. 2:21-cv-10372, 2021 WL 2434128, at *2–3 (E.D. Mich. June 15, 2021); *Yanjia Zeng v. Mayorkas*, No. 21-cv-00446-DLF, 2021 WL 2389433, at *3 (D. D.C. Apr. 16, 2021); *Kurakula v. Renaud*, No. 4:20-cv-03131, 2021 WL 308189, at *4 (D. Neb. Jan. 29, 2021); *Kolluri v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 183316, at *5 (N.D. Tex. Jan. 17, 2021).

C.   **Scope of the Administrative Record**

Turning now to Plaintiffs' alternative argument, they argue the certified administrative record produced by USCIS "is so over- and underinclusive that it prevents effective judicial review," Dkt. No. 44 at 17, such that this Court should remand to the agency "for production of a proper administrative record." *Id.* at 18.

Plaintiffs claim the record is over-inclusive "to the extent it focuses on the creation of the now abandoned biometric recollection requirement and public closures of USCIS offices in the wake of COVID," Dkt. No. 44 at 19, and for including documents regarding creation of a new form I-539A that must be filed for each dependent child. *Id.* at 20. Defendants counter that the information about the biometrics requirement provides information relevant to USCIS processing times and "directly relates to Plaintiffs' argument that the suspended biometrics submission policy demonstrates bad faith by the agency." Dkt. No. 48 at 18, 19. Defendant does not specifically address the inclusion of information about the form I-539A. Still, all of the evidence

that Plaintiffs contend is extraneous could aid the Court's determination of how USCIS's processing times and reasons for delays should factor into its *TRAC* analysis.

Plaintiffs simultaneously argue that the administrative record is insufficient to allow for judicial review about a number of issues relevant to the *TRAC* analysis, such as: (1) omissions that allegedly "create a misleading impression that all agency functions ceased during COVID;" (2) USCIS's first-in-first-out (FIFO) processing rule; (3) "reinstatement of the agency's deference policy or . . . how this could increase speed of decisions without impacting other visa categories;" (4) "the existence of a higher competing priority or a potential prejudice to such priorities if this Court orders relief;" and (5) "the anticipated impact of ending concurrent processing or how the agency used the year preceding implementation to avoid gaps in employment authorization." Dkt. No. 44 at 19–27. Defendant adequately justifies the sufficiency of the administrative record against most these allegations, explaining that (1) Defendant never represented that all USCIS operations had ceased and that "[t]he record explicitly describes the closures of the ASCs and their impact on biometrics submission;" (2) the record shows "that most approved applications were filed earlier than the pending applications," "processing logic for FIFO is straightforward," and the record includes data of averaging processing times and total completions, but projections "would be inapplicable" because of the impacts of COVID-19; (3) USCIS's deference policy has no bearing on the adjudication of the applications at hand; (4) prioritizing Plaintiffs' applications would "displace others that had filed applications prior to Plaintiffs' filing dates;" and (5) past adjudication practices are irrelevant. Dkt. No. 48 at 13–21.

The Court agrees with Defendant that they did not misrepresent how USCIS operations were carrying on during the pandemic, USCIS's deference policy is irrelevant as it applies to extensions of "petition validity" rather than to the two types of applications at issue in the instant case (*i.e.*, I-539 and I-765 forms), it is clear that prioritizing Plaintiffs' applications would

1    prejudice others who had filed their applications earlier, and past adjudication practices also are

2    irrelevant. *See generally* Dkt. No. 48.

3    Nevertheless, the Court is not certain that at this time whether it has all of the information

4    it needs to engage in a thorough examination of how the *TRAC* factors apply to this case.

5    Specifically, it does not have specific information about the adjudication status of the fourteen

6    newly-added individual plaintiffs.[7] More significantly, Defendant claims to have provided

7    information demonstrating the operation of a FIFO processing rule, but the Court cannot discern

8    the operation of FIFO from the specific documents already provided as part of, or in

9    supplementation to, the certified administrative record. *See, e.g.*, Dkt. Nos. 47-1, 47-2 (charts

10   showing original and *Sharma* plaintiffs' I-539 and I-765 application filing and processing dates,

11   organized by form filing dates—without explanation of which variables may have caused

12   applications filed around the same time to be adjudicated on different schedules if USCIS

13   follows the FIFO processing rule, or whether applicants who had not filed lawsuits have had

14   their applications adjudicated at the same pace as the named plaintiffs); *but see* Dkt. No. 48 at 17

15   (claiming that the same exhibits "overwhelmingly demonstrate[] that USCIS has adjudicated

16   Plaintiffs' applications using FIFO").

17   Given the parties' disagreement on this issue, the Court shall entertain a motion from

18   Plaintiffs to supplement the administrative record with respect to the FIFO processing rule and

19   the newly-added plaintiffs only, due **no later than July 26, 2022**. The motion shall be noted as a

20   third-Friday motion, per LCR 7(d)(3) and 7(e)(4), with the motion and response briefs not to

21   exceed twelve (12) pages and the reply brief not to exceed six (6) pages. However, with respect

22   to the information about the newly-added plaintiffs, the Court strongly encourages the parties to

23

24   [7] The parties had previously stipulated to supplementing plaintiff information in chart format. Dkt. No. 38 at 2, n.1.

work cooperatively in resolving this issue and to consider whether they can stipulate to supplement this information in chart format, as they did when they added information about the *Sharma* plaintiffs. *See* Dkt. No. 46-2 (appendix to the declaration of Connie Nolan).

## IV. CONCLUSION

For the above reasons, the Court DENIES Plaintiffs' and Defendant's motions for summary judgment (Dkt. Nos. 44 and 45-1). Plaintiff's motion is DENIED WITH PREJUDICE with respect to the argument regarding the existence of explicit timelines for adjudication of the applications at hand. The remainder of the cross-motions are DENIED WITHOUT PREJUDICE pending appropriate supplementation of the administrative record. The Court also STRIKES the pending motion for class certification (Dkt. No. 53), to be re-filed if appropriate after it rules on any renewed motions for summary judgment.

Dated this 5th day of July 2022.

Tana Lin
United States District Judge